## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRC INDUSTRIES, INC.,**<br>**Plaintiff,** | | **CIVIL ACTION** |
| **v.** | | |
| **SHELLEF HOLDINGS, INC.,**<br>**Defendant.** | | **NO.  24-2952** |

**HODGE, J.**                                                                                         **May 8, 2025**

### <u>MEMORANDUM</u>

Before the Court is Defendant Shellef Holdings, Inc.'s ("Shellef") Motion to Dismiss for Lack of Jurisdiction. (ECF No. 19.) Plaintiff CRC Industries, Inc. ("CRC") filed a declaratory judgment action asking this Court to declare non-infringement and invalidity of claims 1-20 of Shellef's '057 patent. (ECF No. 1.) Shellef now moves to dismiss the action, arguing that it is not subject to personal jurisdiction in this Court. For the following reasons, the Motion to Dismiss is denied.

### I.    BACKGROUND[1]

CRC is a private company incorporated in Pennsylvania, with its principal place of business located in Horsham, Pennsylvania. (ECF No. 1 ¶ 12.) Shellef is a New York corporation with its principal place of business in Denton County, Texas. (ECF No. 1 ¶ 13; ECF No. 19-1 at 4.) Edo Shellef, the named inventor of the '057 patent and Shellef's Director, lives in Texas. (ECF No. 19-2 ¶ 4.)

Shellef is the owner and assignee of U.S. Patent No. 9,816,057 ("'057 patent"), entitled "Nonflammable Composition Containing 1,2 Dichloroethylene." (ECF No. 1 ¶ 21.) The '057

---

[1]    The Court adopts the pagination supplied by the CM/ECF docketing system.

Patent includes 20 claims, which define the scope of the exclusive right granted to the patent applicant. (*Id.* ¶ 22; ECF No. 1-3 at 5.) These claims articulate a solvent that may be used for cleaning various surfaces. (*Id.* ¶ 23.) Shellef is a patent-holding company, meaning it holds patents, including the '057 patent, but does not manufacture products or supply services. (ECF No. 22 at 13.) CRC is "a global leader in the production of specialty chemicals for maintenance, repair and operational professionals and do-it-yourselfers, serving the automotive, industrial, electrical, marine, heavy truck, hardware, and aviation markets." (*Id.* ¶ 29.)

## A. Communications Regarding the '057 Patent[2]

On November 17, 2023, Shellef, via counsel at Fish & Richardson, sent CRC CEO Len Mazzanti a letter stating that nine CRC products infringe the '057 Patent.[3] (ECF No. 1 ¶ 32; ECF No. 1-5 at 2-3.) The letter stated that any resale of these products by CRC customers would also constitute infringement and would render those customers liable to Shellef. (ECF No. 1 ¶ 33; ECF No. 1-5 at 3.) Shellef accused CRC of willful and intentional disregard of Shellef's intellectual property rights, and suggested that the infringement may entitle Shellef to treble damages and attorney's fees. (*Id.*) Shellef's letter stated that it was open to a mutually agreeable resolution if CRC were interested in entering into licensing discussions, and requested that CRC respond to Shellef in two weeks. (*Id.*)

CRC responded to Shellef on December 1, 2023, "stating that CRC respects all valid intellectual property rights of others and would investigate Shellef's specific allegations of infringement." (*Id.* ¶ 34; ECF No. 1-6 at 2.) CRC also stated that prior to Shellef's first letter, CRC

---

[2]    The Court's summary of communications between CRC and Shellef focuses on substantive written and phone communications. In between these communications were often emails about scheduling, dates of responses, and other logistics which, while potentially relevant to this Court's analysis, need not be reproduced here.
[3]    These products are: Cable Clean Degreaser, Cable Clean High Voltage Splice and Termination Cleaner, Lectra Force Electrical Cleaner, Contact Cleaner 2000 Precision Cleaner, NTTM Precision Cleaner, Aviation T-Force Degreaser, Contact Cleaner 2000 VC Precision Cleaner, T-Force Degreaser MUO and T-Force PowerJet Degreaser MUO. (ECF No. 1 ¶ 32.)

was unaware of the '057 Patent. (*Id.*) On December 20, 2023, CRC again reached out to Shellef, asking for more information about Shellef's infringement analysis as well as proposed terms for a license. (ECF No. 1 ¶ 34; ECF No. 1-7 at 16.) Shellef responded on December 22, 2023, providing additional information about its allegations of infringement. (*Id.* ¶ 34; ECF No. 1-7 at 15-16.) Shellef also proposed a royalty rate for past and future sales, which, CRC states in its complaint, CRC did not find acceptable. (*Id.* ¶ 34; ECF No. 1-7 at 15-16.)

Throughout January 2024, CRC prepared to respond to Shellef's allegations of infringement, and the parties entered a Confidential Disclosure Agreement (CDA) to protect trade secrets that might be exchanged during their negotiations. (ECF No. 1 ¶ 35; ECF No. 1-7 at 10-15.) On January 25, 2024[4], CRC sent Shellef a letter "highlighting serious questions of validity that CRC believed affected the '057 patent." (*Id.* ¶ 36; *see generally* ECF No. 1-9.) The letter also expressed CRC's willingness to enter into a potential license agreement "under the right circumstances." (ECF No. 1-9 at 2.) Shellef responded on February 6, 2024 disagreeing with CRC's assessment and rebutting CRC's points. (*Id.* ¶ 37; *see generally* ECF No. 1-10.) Shellef also requested more information from CRC regarding its product formulations, sales amounts, and projected sales for the following year. (*Id.*) Additionally, Shellef asked CRC to propose "what it considers to be an appropriate royalty rate (or other licensing terms) for its continued use of the '057 inventions." (*Id.*; ECF No. 1-10 at 4.)

CRC responded on February 26, 2024 with the requested information about its product formulation and a counter proposal for the royalty. (ECF No. 1 ¶ 38; *see generally* ECF No. 1-11.) On March 26, 2024 Shellef rejected this counter proposal, stating that it did not believe CRC's proposal to be workable, and responded with an alternative rate that CRC contends "resembled

---

[4]    The letter is dated January 19, 2024; however, the Court understands that it was emailed to Shellef on January 25, 2024.

[Shellef's] initial offer." (*Id.*; ECF No. 1-12 at 3-5.) The parties communicated again on April 25, 2024 (ECF No. 1-13) and May 5, 2024 (ECF No. 1-14) about their proposals for a royalty rate, but were unsuccessful in reaching an agreement. (*Id.*)

On May 17, 2024, the parties met via videoconference to discuss the alleged infringement and a potential resolution to the dispute. (*Id.* ¶ 39.) Shellef followed up via email on June 5, 2024 stating that "[Shellef's] position remains the same. If CRC wishes to continue practicing the claims of the 057 patent, it must obtain a license from Shellef Holdings based on reasonable (and thus realistic) royalty rates." (ECF No. 1-15 at 2.) Shellef further wrote that "if CRC fails to obtain a license under the 057 patent, it is exposing itself to ever increasing liability from sales of its infringing products, as well as a subsequent finding of willful infringement, with the attendant trebling of damages and attorney fees." (*Id.*)

These communications did not continue beyond Shellef's June letter. (ECF No. 19-1 at 6.) Rather, on July 5, 2024 CRC filed the instant lawsuit seeking a declaratory judgment that it had not infringed the '057 patent.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must grant a defendant's motion to dismiss if the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992). To meet this burden, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). Although the plaintiff bears the burden of establishing

jurisdiction, the court must accept as true any allegations the plaintiff puts forward, and construe disputed facts in the plaintiff's favor. *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 368 (3d Cir.2002)

## III.    DISCUSSION

The issue before the Court is whether it may exercise specific personal jurisdiction over Defendant Shellef. Because this issue is closely related to the substance of patent law, the Court applies Federal Circuit law to conduct its analysis. *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1152 (Fed. Cir. 2021) (citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1016 (Fed. Cir. 2009)).

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Trimble*, 997 F.3d at 1152 (citing *Autogenomics*, 566 F.3d at 1017). The Pennsylvania long-arm statute grants courts jurisdiction "to the fullest extent allowed" under the United States Constitution. 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b); *see also Mellon Bank (East) PSFS,* 960 F.2d at 1221. To satisfy the Due Process Clause, a defendant must have sufficient minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id*. at 317. In this case, Plaintiff only asserts the existence of specific jurisdiction, so the Court will proceed to analyze only whether specific jurisdiction exists.[5]

---

[5]     Shellef's Motion to Dismiss addresses the issues of general personal jurisdiction, stating that the company does no business in Pennsylvania and does not have regular, continuous, or systemic contacts in Pennsylvania. (*See* ECF No. 19-1 at 8-9.) However, because CRC does not allege that this Court has general jurisdiction over Shellef (*see* ECF No. 22 at 11, n.1), the Court need not analyze it.

### A.  Minimum Contacts

Defendant Shellef Holdings, Inc. moves to dismiss CRC's complaint for lack of personal jurisdiction. (ECF No. 19 at 1.) Shellef argues that it is not subject to personal jurisdiction in the Eastern District of Pennsylvania. (ECF No. 19-1 at 4.) Shellef is a New York corporation with its principal place of business in Denton County, Texas. (*Id.*) According to Shellef, CRC attempts to assert specific jurisdiction based solely on the parties' pre-suit communications. (ECF No. 19-1 at 4.) These communications "consisted of Shellef notifying CRC of [Shellef's] rights in the 057 Patent and its infringement concerns and attempting to negotiate an amicable resolution to the dispute out of court by way of a patent license." (*Id.*)

Shellef asserts that the communications between Shellef and CRC are insufficient under Federal Circuit precedent to establish personal jurisdiction. (*Id.*) Specifically, Shellef has no connections to Pennsylvania, and to force the company to litigate in this District would be unduly burdensome. (*Id.*) In addition, Defendant argues that if this Court were to exercise jurisdiction over Shellef, it would be unfair and unreasonable under the *Burger King* factors. (*Id.*)

While CRC writes in its complaint that the parties engaged in "extensive pre-suit communications . . . in which Shellef repeatedly stated that it will sue CRC . . . over the course of seven months." (ECF No. 1 ¶ 18.), Shellef argues that CRC's characterization of the communications is "an exaggeration," and that "over the course of seven months, Shellef sent CRC five substantive letters/emails inviting a license to the '057 Patent, CRC sent Shellef four substantive responses to those letters/emails, and the parties had one telephone conversation." (ECF No. 19-1 at 6-7.)

In support of its argument that the communications do not satisfy the test for specific jurisdiction, Shellef relies on *Red Wing Shoe*, in which the Federal Circuit held that a patent holder

may notify a potential infringer of such infringement without subjecting itself to personal jurisdiction in the infringer's home forum. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness."). In *Red Wing*, the Federal Circuit found that the patent holder had sufficient minimum contacts with the forum state, but that cease-and-desist letters alone were insufficient to create personal jurisdiction because such contacts alone do not comport with principles of fair play and substantial justice. *Id.* at 1360-61 (citing *Burger King*, 471 U.S. at 476). CRC disputes that *Red Wing* applies here. (ECF No. 22 at 13-14.) In *Trimble*, a case decided 23 years after *Red Wing*, the Federal Circuit noted that *Red Wing*, though still good law, did not stand for the proposition that communications threatening suit or proposing settlement cannot be sufficient to establish personal jurisdiction. *Trimble*, 997 F.3d at 1155. "The central question under Red Wing is now whether a defendant's connection to a forum is sufficient to satisfy the minimum contacts or purposeful availment test and . . . whether the exercise of jurisdiction conforms to the due process and fairness criteria of precedent." *Id.* at 1156.

In addition to arguing that it did not have sufficient minimum contacts, Shellef contends that asserting personal jurisdiction would be unreasonable under the *Burger King* factors. (ECF No. 19-1 at 13.) In *Burger King*, the Supreme Court articulated five factors courts must consider in evaluating whether exercising jurisdiction would comport with notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). These factors are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S., 286, 292 (1980)). Shellef states that factors one and four weigh in favor of dismissal; as a small, New York and Texas-based company, the burden on the defendant to litigate in Pennsylvania would be substantial. (ECF No. 19-1 at 13-14.) As to factor four, the most efficient resolution of controversies, Shellef argues that the purpose of its communications with CRC was to resolve the conflict out of court, and allowing the case to move forward in Pennsylvania would dissuade such dispute resolution, thus putting a strain on the judicial system. (*Id.* at 14.) Shellef makes nearly the same argument in asserting that factor five, the shared interests of the States in furthering social policies, weighs against exercising jurisdiction. (*Id.* at 15.) Shellef acknowledges that factors two and three weigh in CRC's favor. (*Id.* at 15.)

CRC agrees with Shellef that it is the communications between CRC and Shellef that CRC argues establish this Court's jurisdiction. CRC states that Shellef's communications were directed at CRC, a Pennsylvania corporation, for the purpose of monetizing its patents, and that the communications supply the requisite minimum contacts under Federal Circuit precedent. (ECF No. 22 at 13.) CRC states that Shellef does not contest that it reached into the forum state to contact CRC or that this action arises out of those contacts; Shellef only disputes whether those contacts alone are enough to constitute minimum contacts. (*Id.*) CRC also argues that Shellef's reliance on *Red Wing* is misplaced, because the Federal Circuit in that case dismissed the case based on a lack of reasonableness and fair play, rather than on minimum contacts. (*Id.*) Moreover, according to CRC, in addition to satisfying the minimum contacts requirement, Shellef has not shown that this

Court exercising jurisdiction would be unfair or unreasonable, and disputes that the *Burger King* factors support dismissal. (*Id.* at 16-17.)

In arguing that the parties' communications satisfy the minimum contacts requirement, CRC relies heavily on *Trimble*. In *Trimble*, the Federal Circuit noted that in patent litigation, "communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction." *Trimble Inc.*, 997 F.3d at 1155. In *Trimble*, two companies engaged in a patent dispute exchanged communications about the patent and potential infringement. *Id.* at 1151. These communications included an initial letter accusing Trimble, the non-patent holder, of infringement, attached to which was an unfiled draft complaint asserting infringement, as well as a proposed licensing agreement; telephone communications between the parties; and negotiations that continued for three months and involved at least twenty-two letters, emails, or phone calls. *Id.*

Finally, one month later, Trimble filed suit against PerDiemCo, the patent-holder, in the Northern District of California, where Trimble is headquartered. *Id.* at 1151-52. PerDiemCo filed a Motion to Dismiss for Lack of Jurisdiction, relying on *Red Wing. Id.* at 1152. The District Court found for PerDiemCo, but the Federal Circuit reversed, finding that "PerDiemCo's contacts with California are far more extensive than those in *Red Wing.*" *Id.* at 1156. These contacts, the Federal Circuit explained, "went far beyond 'solely ... informing a party who happens to be located [in California] of suspected infringement,'" and "an-arms negotiation in anticipation of a long-term business relationship." *Id.* (internal citations omitted). The court held that these communications fell into the latter category because they were voluminous in number and occurred over a relatively short amount of time, and involved attempts to negotiate a licensing agreement. *Id.* at 1157.

The communications Shellef documents in its motion are almost identical to those laid out in CRC's complaint, both in terms of number and substance. (ECF No. 19-1 at 6; ECF No. 1 ¶¶

32-39.) While Shellef describes these communications as insufficient to establish minimum contacts, CRC argues that they are exactly the type of communications the Federal Circuit held in *Trimble* do satisfy minimum contacts. Thus, the question for this Court is multifaceted; the Court must consider both the volume and the contents of the communications between CRC and Shellef, to determine whether they amount to Shellef purposely availing itself of Pennsylvania as a forum. The Federal Circuit has not articulated a bright line rule, and it is not necessary for the Court to quibble over the exact number of communications necessary to exercise jurisdiction. In this case, the communications between the parties—back and forth from November 2023 to June 2024— resemble those in *Trimble* more than the communications in *Red Wing.* Shellef was not merely notifying CRC of suspected infringement. The communications involved extensive licensing negotiations and substantive discussions and disputes over the patent and the nature of suspected infringement.

Shellef attempts to distinguish *Trimble* by pointing out factual differences—the patent owner included a draft complaint in its initial outreach; the patent owner accused Trimble of infringing eleven patents, as opposed to a single one; the patent owner attempted to force Trimble into binding mediation. (ECF No. 19-1 at 11-12.) However, the Court believes that the similarities in the communications in the present case and *Trimble* are more notable than any distinctions or differences that may be present. Shellef did not attach a draft complaint to its initial letter to CRC, but it *did* threaten litigation. (*See* ECF No. 1 ¶ 33.) Like *Trimble*, the communications were extensive and involved detailed negotiations before ultimately failing. For these reasons, this Court finds that minimum contacts is satisfied.

The Court will also address Shellef's argument that exercising jurisdiction would be unfair and unreasonable to Shellef. The Court notes at the outset what the Federal Circuit has stated: it is

a "'rare' situation[] in which sufficient minimum contacts exists but where the exercise of jurisdiction would be unreasonable." *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1381 (Fed. Cir. 2022) (internal citations omitted). This provides the Court with a clear guidepost.

### B. *Burger King* Factors

With respect to the five *Burger King* factors, Shellef conceded that factors two and three, the forum State's interest in adjudicating the dispute and the plaintiff's interest in obtaining convenient and effective relief, weigh in favor of exercising jurisdiction in Pennsylvania. (ECF No. 19-1 at 14.) The Court will address the remaining factors in turn. Factor one is burden on the defendant. *See Burger King*, 471 U.S. at 477. Shellef argues that the burden is high because Shellef is a New York corporation with its headquarters in Texas, and Director Edo Shellef lives in Texas. (ECF No. 19-1 at 13.) The Court disagrees. For one, according to CRC, in addition to being incorporated in New York, Shellef has a physical address in New York. (ECF No. 22 at 18.) Given New York's proximity to Pennsylvania, this mitigates the burden of travel. Although the Court understands that any travel imposes some burden, that burden alone does not outweigh the other factors. The Court is also swayed by CRC's additional points that the small number of employees and the ease of technological communications will reduce the financial burden, even for individuals based in Texas. (*Id.*)

The fourth factor, the interstate judicial system's interest in obtaining an efficient resolution, is, at most, neutral. The Court is not persuaded by Shellef's claim that this Court's exercising jurisdiction would dissuade parties from settlement. (ECF No. 19-1 at 14.) The Federal Circuit said as much in *Trimble*, noting, "[e]ven assuming that . . . the most efficient resolution of a controversy is settlement . . . , there is nothing preventing the parties from reaching a settlement while this case is pending." *Trimble Inc.*, 997 F.3d at 1159. As for factor five, the shared interests

of states in furthering substantive social policies, there is no conflict between the interests of Pennsylvania and any other state, because federal patent law governs. *See id.*

Because of the strong interest of Pennsylvania in adjudicating this dispute, CRC's own interest in obtaining relief, and the minimal burden on Shellef in litigating in Pennsylvania, the *Burger King* factors do not establish that for this Court to exercise jurisdiction would be unfair or unreasonable.

## IV.    CONCLUSION

For the foregoing reasons, Shellef's Motion to Dismiss is denied. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

**HODGE, KELLEY B., J.**