IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRC INDUSTRIES, INC.,<br>　　　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| SHELLEF HOLDINGS, INC.,<br>　　　　　　　Defendant. | NO.  24-2952 |

**MEMORANDUM**

HODGE, J.                                                                                                July 2, 2026

Before the Court is Defendant/Counterclaim Plaintiff Shellef Holdings, Inc.'s ("Shellef")

Motion for Claim Construction (ECF No. 56), Plaintiff/Counterclaim Defendant CRC Industries,

Inc.'s ("CRC") Motion for Claim Construction (ECF No. 58), the parties' Joint Claim Construction

Brief (ECF No. 61), and supplemental briefing following the *Markman* hearing (ECF Nos. 67, 68).

The parties have agreed on the construction of three claim terms, leaving only one remaining

disputed term. On May 12, 2026, the parties appeared before this Court for a *Markman* hearing

regarding the disputed term. For the following reasons, the Court agrees with and adopts Shellef's

construction of the term.

I.        BACKGROUND[1]

　　A.        The '057 Patent

In this lawsuit, CRC seeks a declaratory judgment of non-infringement and invalidity

premised on indefiniteness of Claims 1–20 of United States Patent No. 9,816,057 (the "'057

Patent"). In response, Shellef asserts that the '057 Patent is valid and brings claims against CRC

for infringement of Claims 1–12 and 18–20 of the patent.

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

The '057 Patent claims a solvent composition and a method of cold cleaning a surface with a solvent composition. ('057 Patent 5:46–6:63.) The claimed solvent composition is comprised of trans-1,2-dichloroethylene ("t-DCE"), which is a chemical long-recognized for its cleaning ability, and one or more of hydrofluoroether ("HFE") and n-propyl bromide ("nPB"). (*Id.* at 1:5–13, 2:11–14.) The patent explains that this composition was developed as a result of efforts to safely leverage the solubizing power of t-DCE while managing the chemical's low flash point (and therefore high flammability). (*Id.* at 1:8–13, 1:52–56.) Prior methods of dealing with the flammability issue involved mixing t-DCE with hydrochlorofluorocarbons ("HCFCs"), hydrofluorocarbons ("HFCs"), or similar volatile compounds. (*Id.* at 1:14–34.) Combining t-DCE with HFE and/or nPB, as disclosed in the '057 Patent, yields a nonflammable solvent composition containing chemicals that are less environmentally harmful. (*Id.* at 2:11–14.) The patent disclosed use of this composition as an industrial degreaser for cleaning electronic and mechanical parts, photographic film, molds for casting plastics, and other items. (*Id.* at 4:30–54.)

Relevant to the dispute now before the Court, the independent claims in the '057 Patent regarding the solvent composition refer to compositions comprising "***about*** 70 wt. % or more of [t-DCE]; and ***about*** 0.1 to ***about*** 17 wt. % of one or more of [HFE and nPB]," "***about*** 70 wt. % or more of [t-DCE]; and ***about*** 0.1 to ***about*** 20 wt. % of one or more of [HFE and nPB]," and "***about*** 70 wt. % or more of [t-DCE], and ***about*** 0.1 to ***about*** 30 wt. % of one or more of [HFE and nPB]." (*Id.* at 5:46–53, 6:8–14, 6:21–25 (emphasis added).)

### B.    Agreed Upon Constructions

The parties submitted a stipulation agreeing on the construction of the three terms below, which the Court now approves.

| Claims | Claim Term | Construction |
|---|---|---|
| 1, 8, and 9 | non-azeotropic | A term used to describe a mixture of two or more solvents which does not maintain substantially the same composition in the liquid phase and in the vapor phase at the boiling point of the mixture |
| 6 and 7 | flash point | The lowest temperature at which the vapors from a volatile combustible liquid will ignite momentarily in air upon the application of a small flame |
| 17 and 18 | nonflammable | A term used to describe a composition which does not exhibit a flash point up to the boiling point of the composition at standard atmospheric pressure |

(ECF No. 55 at 2.)

## C.    Disputed Term and Proposed Construction

The sole remaining dispute is the construction of the term "about" as it is used in connection with a particular quantity. Specifically, the parties disagree about the extent to which the term "about," when used as a modifier, extends a measurement beyond the stated numeric value.[2] The parties submit the proposed claim constructions below.

| Claims | Claim Term | CRC's Proposed Construction | Shellef's Proposed Construction[3] |
|---|---|---|---|
| 1–5, 8, 9, and 20 | modifier "about" used in connection with a quantity | The stated numeric value of the quantity, including the degree of error associated with the measurement of the particular quantity but less than and not including ±1 wt. %.<br><br>Alternatively, indefinite. | The stated numeric value of the quantity, including the degree of error associated with the measurement of the particular quantity. |

---

[2] The quantities being modified in the patent are the concentrations of respective components in the solvent composition measured in percent by weight, referred to in the claims as "wt. %." (*See* ECF No. 61 at 12.)

[3] Shellef's previous proposal included "*at least* the degree of error associated with the measurement of the particular quantity." (ECF No. 55 at 2 (emphasis added).) During the *Markman* hearing, Shellef stated it would drop the "at least" language from its proposal. Shellef's subsequent briefing reaffirms the proposed construction presented in this chart. (ECF No. 67 at 6 n.2.)

3

(*Id.*; Tr. 59:1–60:12; ECF No. 67 at 6 n.2.)[4]

## II.    LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWS Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation modified). The interpretation and construction of patent claims is a matter of law exclusively for the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art [("POSA")] when read in the context of the specification and prosecution history." *Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1313). "In some cases, the ordinary meaning of claim language as understood by a [POSA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In other cases, determination of the meaning of the claim term as understood by a POSA is less readily apparent, and requires the court to look to sources including "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). However, while extrinsic evidence may be useful, the Federal Circuit has cautioned that it is "less reliable" than intrinsic evidence. *Id.* at 1318.

There are two exceptions to the rule that words of a claim are generally given their ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own

---

[4] Citations to "Tr." refer to the Transcript of the *Markman* hearing held on May 12, 2026.

lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365. To act as his own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Id.* (citation modified). Disavowal of claim scope is held to a "similarly exacting" standard. *Id.* at 1366. Where the specification makes clear that the invention does not include a particular feature, that feature is outside the scope of the claim; but mere criticism of a particular embodiment or the presence of a particular limitation in some or all of the embodiments is insufficient to demonstrate clear disavowal. *Id.*

## III.    DISCUSSION

### A.    Construction of "About"

#### 1.    The Patentee's Attempt to Act As His Own Lexicographer

Shellef asserts that the patent specification reveals the patentee's intent to act as his own lexicographer to define "about," and that its construction is aligned with the patentee's definition. (ECF No. 61 at 12.) Shellef points to the following portion of the specification:

> **As used herein**, the modifier "about" used in connection with a quantity is inclusive of the stated value and has the meaning dictated by the context. For example, it includes at least the degree of error associated with the measurement of the particular quantity. When used in the context of a range, the modifier "about" should also be considered as disclosing the range defined by the absolute values of the two endpoints. For example, the range "from about 2 to about 4" also discloses the range "from 2 to 4."

(*Id.* at 26 (citing '057 Patent at 2:40–48) (emphasis added).) Shellef states that use of the phrase "as used herein" in the specification indicates that the patentee intended to define "about" to mean "the degree of error associated with the measurement of the particular quantity." (*See id.* (citing *Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007)); ECF No. 67 at 6.) CRC contends that the patentee failed to "set forth a definition of 'about' with 'sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim

term.'" (ECF No. 61 at 43 (quoting *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005)).)[5]

As noted above, to act as his own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). A patentee fails to act as his own lexicographer when he does not set out a definition "with reasonable clarity, deliberateness, and precision." *Merck*, 395 F.3d at 1371 (quoting *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994)).

Here, the patentee failed to provide the clarity and precision necessary to actually define the term "about" in the specification. *See Signify N. Am. Corp. v. Lepro Innovation Inc*, Case No. 2:22-cv-02095, 2023 WL 8435567, at *5 (D. Nev. Dec. 4, 2023). The patentee began the purported definition of "about" with the phrase "[a]s used herein," which courts have interpreted to be definitional. *See Abbott Labs.*, 473 F.3d at 1210 (explaining that "as used herein" is definitional). However, the remainder of the sentence provides only that the term "about . . . is inclusive of the stated value and has the meaning dictated by the context." ('057 Patent at 2:40–42.) The requisite clarity and precision are missing for two reasons. First, the latter portion of this definition is inherently subject to change based on the specific "context," and therefore cannot be said to be precise. Second, the language "has the meaning dictated by context" indicates that the patentee did not intend to set forth a clear and precise definition; rather, the patentee expected that the meaning of the term would be ascertained with reference to other contexts. Furthermore, while the next sentence in the specification provides an example of what is included in the meaning of the term— the degree of error associated with the measurement (*id.* at 2:42–44)—use of exemplary language

---

[5] Alternatively, CRC asserts that if the patentee did act as his own lexicographer, he defined the term to cover an "unbounded range," rendering the relevant claims indefinite. (Tr. 85:17–86:4, 88:2–89:5.)

"does not clearly demonstrate that the patentees intended to assign some all-encompassing, specific meaning" to a term. *See Baxter Healthcare Corp. v. Nevakar Injectables, Inc.*, Civil Action No. 21-1184, 2023 WL 4175261, at *7 (D. Del. June 26, 2023) (declining to find that patentees acted as their own lexicographers where the specification provided examples of what a claim term "includes"). Accordingly, the Court finds that the patentee did not set forth a definition of the term "about" with "clarity, deliberateness, and precision," *Merck*, 395 F.3d at 1371, and thus did not act as his own lexicographer.[6]

### 2.    Construction Based on Intrinsic Evidence

Having determined that the patentee did not act as his own lexicographer, the Court turns its attention to the presumption that the words of a claim are given their plain and ordinary meaning as understood by a POSA when read in the context of the specification and prosecution history. *Thorner*, 669 F.3d at 1365. "The word 'about' does not have a universal meaning in patent claims . . . the meaning depends on the technological facts of the particular case." *Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Lab'ys, Ltd.*, 476 F.3d 1321, 1326 (Fed. Cir. 2007) (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995)). Because the use of the word "avoids a strict numerical boundary to the specified parameter[,] [i]ts range must be interpreted in its technological and stylistic context," which requires consideration of how the term was used in the patent specification, prosecution history, and claims. *Id.*

---

[6] The Court notes that even if the patentee had acted as his own lexicographer and sufficiently defined "about," it is not clear that Shellef's new proposed definition would match the patentee's lexicography. Shellef asserts that the '057 Patent "expressly defines the permissible deviation inherent to 'about' as 'the degree of error associated with the measurement of the particular quantity.'" (ECF No. 67 at 6.) But, as CRC suggested at the *Markman* hearing and emphasized in its supplemental briefing, Shellef's definition removes language from the patentee's would-be lexicography, specifically the phrase "at least," and relies on the example provided in the specification for the entirety of the definition. (Tr. 81:24–82:9; ECF No. 68 at 3.)

The parties agree that the meaning of "about" must include "[t]he stated numeric value of the quantity," including "the degree of error associated with the measurement of the particular quantity," but disagree as to whether the intrinsic evidence requires a cap on how far "about" may extend beyond the stated numeric value. (*See* ECF No. 55 at 2; ECF No. ECF No. 61 at 23, 35; ECF No. 67 at 6 n.2.) CRC contends that the intrinsic evidence—specifically the exemplary ranges for the embodiments discussed in the patent specification, narrowing of the claim amendments during patent prosecution, claim language, and purpose of the invention—require a limitation on the acceptable variance associated with the term "about." (*Id.* at 13–14, 35–41.) CRC avers that this evidence supports the establishment of a "maximum margin that the term 'about' can have," and that this maximum margin is ±1 wt. %. (*Id.* at 13–14.)

In response, Shellef contends that a POSA would understand that the use of "about" in relation to a measurement means the value extends to include the degree of error associated with the measurement (ECF No. 61 at 52); CRC improperly relies on exemplary ranges provided in the specification to support its proposed limitation on "about" (*id.* at 54–56); the prosecution history does not indicate a clear disavowal of claim scope affecting the word "about" (*id.* at 57–58); and the patent claims do not require a specific degree of error (*id.* at 58–60). Shellef further asserts that its proposed construction—which does not explicitly impose a limitation on the scope of "about," but instead construes the term to include the degree of error—follows the patentee's intention and is largely in line with the plain and ordinary meaning of the term. (Tr. 33:13–20, 38:8–20.)

CRC's proposed limitation on the degree of error is not supported by the intrinsic evidence. First, as CRC acknowledged during the hearing (*Id.* at 104:5–104:19), while the specification provides several exemplary ranges for potential compositions, the fact that a broader margin around "about" may cause those ranges to overlap does not require a numerical limitation in the

construction of the term. The exemplary embodiments provided in the specification may be important to how one understands the patentee's use of a term, but courts "do not read limitations from the embodiments in the specification into the claims." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

Second, the amendment to Claim 1 following the initial denial of the patent application does not lend sufficient support for CRC's proposed construction. The Court agrees with Shellef that the patentee's statements during patent prosecution do not rise to the exacting standard for disavowal, which requires "clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." (ECF No. 61 at 58 (citing *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016)).) During patent prosecution, the U.S. Patent and Trademark Office ("PTO") rejected the '057 Patent application as being anticipated by United States Patent No. 6,852,684 (the "Westbrook prior art"). Following this rejection, the patentee amended Claim 1 to claim a composition including a specific HFE, which is represented by a different formula than the hydrofluorocarbon ether inerting agents taught by Westbrook. (ECF No. 61-1 at 20–21.) Only after discussing the change to the inerting agent did the patentee briefly address the amendment to the claimed range of HFE and nPB in Claim 1. (*Id.*) In explaining the change, the patentee emphasized that the claimed composition comprises lower amounts of the specific HFE than the Westbrook prior art. (*Id.* at 21.) The Court is not convinced that this constitutes clear and unequivocal evidence that the patentee intended to set a limitation on the claim scope, particularly given that another claim—prosecution Claim 10 (now asserted Claim 8)—still claimed a range with an upper bound of 20 wt. % for the inerting agent. (ECF No. 61 at 57.)

Third, the language in Claims 8 and 9 does not necessarily support a numerical limitation on the term "about." The ranges in these claims already overlap significantly, indicating that complete distinction of the ranges is not necessary. And the variance allowed by Shellef's construction of "about" would not make these ranges identical as CRC suggests.

Lastly, while CRC argues that the purpose of the invention counsels toward a narrower construction of "about" (ECF No. 61 at 41), the Court is not convinced that this requires the adoption of the specific limitation CRC proposes. For instance, the intrinsic evidence does not indicate that the recommendation for "small amounts of HFE and/or nPB" discussed in the specification ('057 Patent at 3:57–62) is inconsistent with the degree of error of a particular measurement, or that a "small amount" could not extend to margins around the stated value beyond $\pm 1$ wt. %, such as to 1.1 wt. %, 1.3 wt. %, or more.[7]

The parties agree that the proper construction of the term "about" would include the degree of error associated with the measurement of the particular quantity. Additionally, as discussed *infra* Section III.A.1, the patentee clearly intended to include the degree of error in any definition of "about." Moreover, during the *Markman* hearing, Shellef asserted—and CRC did not contest—that a POSA would generally understand the plain and ordinary meaning of "about" in this context to be the measurement error associated with the quantity being measured.[8] (Tr. 38:8–15.) For these reasons, the Court adopts Shellef's construction, which is most in line with the patentee's intent

---

[7] Moreover, while CRC asserts that the intrinsic evidence supports their limitation of $\pm 1$ wt. % around the stated numeric value, it often cites to evidence that suggests a larger margin may also comport with the patentee's intent. (*See* ECF No. 61 at 39 (asserting that if the margin of "about" is equal to or exceeds 1.5 wt. %, Claim 1 and Claim 8 would overlap), 41 (arguing that if "about" equals or exceeds 1.5 wt. % it would recapture claim scope that the patentee disclaimed during patent prosecution); Tr. 103:2–5.)

[8] In response to this assertion, CRC argued only that the patentee had acted as his own lexicographer in defining the term to include an unbounded range. (Tr. 88:12–18.)

(as evidenced by his attempt to define the term) and the plain and ordinary meaning as understood by a POSA.

### B.     Indefiniteness

CRC asserts that if Shellef's construction of the term "about" is adopted, it renders the claims using that term indefinite and, by extension, all claims are invalid. (ECF No. 61 at 35.) The Court declines to make the determination on indefiniteness at this juncture, as expert discovery may provide insight into measurement techniques leveraged by POSAs in the field, as well as the reliability of those techniques insofar as they allow a POSA to ascertain with certainty the claimed ranges in the '057 Patent.[9]

## IV.   CONCLUSION

For the foregoing reasons, the Court adopts Shellef's proposed claim construction of the disputed term. An appropriate Order follows.

BY THE COURT:

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**

---

[9] During the *Markman* hearing, the parties each discussed the error rates associated with tests that a POSA may conduct when attempting to measure quantities disclosed in the '057 Patent. At this point, the Court does not have briefing regarding whether there is a common test or tests that a POSA would understand the patent to be referring to, error rates associated with those tests, or other relevant information, including information contained in expert reports. This context would provide clarity as to how a POSA would read the patent and understand the claims that include the term "about."